**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

SHEILA JEAN BADGETT                                                         PLAINTIFF

v.                                          No. 2:10CV00128 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                        DEFENDANT

<u>**OPINION AND ORDER**</u>

Sheila Badgett applied for disability insurance benefits and supplemental security income.

She alleged that she was disabled and unable to work since December of 2006.  Her applications

were denied initially on August 21, 2007, and upon reconsideration on December 21, 2007.  Badgett

then requested a hearing at which she appeared and testified on June 23, 2009 in Memphis,

Tennessee.  The Administrative Law Judge concluded that Badgett was not disabled, and the

Appeals Council denied her request to review the ALJ's decision—rendering it final.  Subsequently,

Badgett commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the ALJ's

determination.  Review by the Court is limited.  The Court must determine whether the ALJ's

decision is supported by substantial evidence on the record as a whole and whether it is based on

legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997).

The Social Security Administration has promulgated a five-step sequential evaluation process

for determining whether a claimant is disabled.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  The

first step is to determine whether the claimant is engaged in substantial gainful activity.  If the

claimant is engaged in substantial gainful action, benefits are denied.  The second step is to

determine whether the claimant has an impairment or combination of impairments that significantly

limits the claimant's ability to perform basic work activities, a "severe" impairment.  If not, benefits

are denied.  The third step is to determine whether the severe impairments meet or equal a listed

impairment that is presumed to be disabling.  If so, and if the duration requirement is met, benefits are awarded.  If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant medical and other evidence.  The fourth step is to determine whether the claimant has sufficient residual functional capacity, despite the impairments, to perform the physical and mental demands of past relevant work.  If so, benefits are denied.  The fifth step is to determine whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  If so, benefits are denied; if not, benefits are awarded.  *Id.*

Badgett was born in 1964.  She graduated from high school and obtained a cosmetology license.  Badgett has been employed in a variety of capacities including as a bartender, waitress, stocker, salesperson, phone solicitor, and housekeeper, but the record is unclear regarding how long she stayed in most of these positions.  Badgett testified that she was employed as a sales person for about four months and had cleaned two houses once a week "on and off" since 2003.  She said that, as a house cleaner, she made about $115 per week.[1]

In 2001, Badgett experienced severe back pain, tingling on her left side, and muscle spasms.  She was diagnosed with probable degenerative disc disease and associated fibromyalgia.  She testified that in 2006 she was physically assaulted in Little Rock.  She was diagnosed with low back pain and mild degenerative joint disease of the lumbar spine in 2007.  Badgett reported constant aches in her back, hips, and legs as well as almost daily headaches.  In 2008, she was diagnosed with degenerative disc disease and mild neural foramenal spurring.  Later, she was diagnosed with altered

---

[1] The DISCO DIB Insured Status Report indicates that Badgett had earnings of $8,417.50 in 2007 and $4,253.00 in 2008.

mental status secondary to alcohol intoxication and Ambien overdose, chronic alcohol abuse, depression and kypokalemia.

The ALJ concluded that Badgett met "the insured status requirements of the Social Security Act through March 31, 2010."  At the first step, the ALJ found that Badgett had not engaged in any substantial gainful activity since December 12, 2006, the onset date of her alleged disability.  The ALJ concluded that her attempt to work as a tombstones salesperson from January to April of 2008 was an unsuccessful work attempt.  At the second step, the ALJ also found that Badgett suffers from two severe impairments, fibromyalgia and headaches.  At the third step, the ALJ found that Badgett does not have an impairment or combination of impairments that are medically equivalent to a Listing.  The ALJ concluded that Badgett "has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)."  At the fourth step, the ALJ found that Badgett is not disabled because she is still "capable of performing her past work as a waitress, bartender, phone solicitor, salesman and cleaner."  Nevertheless, the ALJ also moved to the fifth step because he could not positively determine "if all [Badgett's] past jobs constituted past relevant work."  At the fifth step, the ALJ applied the Medical-Vocational Rules and again held that Badgett is not disabled.  Considering her age, education, work experience, and residual functional capacity, the ALJ found that there were other jobs that exist in significant numbers in the national economy which Badgett could perform.  The ALJ made that finding without calling a vocational expert.

Badgett contends that the ALJ erred in finding her "not disabled" at the fourth step, which requires a determination as to whether the claimant can perform past relevant work.  Past relevant work is work that the claimant has performed within the past 15 years, that was substantial gainful

3

activity, and that lasted long enough for the claimant to learn how to do it.   20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).   The ALJ concluded that Badgett's four months as a salesperson was an unsuccessful work attempt and, therefore, not substantial gainful activity.   *See* 20 C.F.R. § 404.1574(c); 20 C.F.R. § 416.974(c).   The only clear evidence regarding Badgett's income from her work as a house cleaner is her testimony that she made $115 per week, or $460 per month, cleaning two houses, which falls below the monthly minimum specified in the regulatory earning guidelines.   20 C.F.R. § 404.1574(b); 20 C.F.R. § 416.974(b).   Consequently, neither her brief stint as a purveyor of tombstones nor her work as a house cleaner constitutes past relevant work.   Further, as the ALJ noted in his opinion, the evidence fails to show how long Badgett worked at any of the other jobs that she listed on her Work History Report.   Thus, the evidence does not establish that Badgett performed any past relevant work.   In such a case, the regulations direct the ALJ to move to the fifth step.   20 C.F.R. § 404.1520(g)(1); 20 C.F.R. § 416.920(g)(1); *see also Vincent v. Apfel*, 264 F.3d 767, 769 (8th Cir. 2001).

While the ALJ erred in concluding at the fourth step that Badgett was not disabled, the ALJ did not end his inquiry at the fourth step.   Rather, the ALJ continued to the fifth step and alternatively concluded that Badgett was not disabled based on analysis at that step.

Badgett contends that the ALJ's alternative basis for finding her not disabled—that, based on her age, education, work experience, and residual functional capacity, she could perform other jobs existing in significant numbers in the national economy—cannot stand because the ALJ did not elicit any testimony from a vocational expert.   "Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert."

4

*Draper v. Barnhart*, 425 F.3d 1127, 1132 (8th Cir. 2005) (citing *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)); *see also Lucy v. Chater*, 113 F.3d 905, 908-909 (8th Cir. 1997).  There is an exception to this rule where "the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC [residual functional capacity] to perform the full range of activities listed in the guidelines."  *Draper*, 425 F.3d at 1132 (alteration in original) (citing *Reed*, 988 F.2d at 816).

"Nonexertional limitations are limitations other than on strength but which nonetheless reduce an individual's ability to work." *Asher v. Bowen*, 837 F.2d 825, 827 n.2 (8th Cir. 1988).  The ALJ concluded that Badgett "has the following severe impairments: fibromyalgia and headaches[.]"  Fibromyalgia and headaches are nonexertional impairments. *See Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999) ("pain or mental incapacity" are examples of nonexertional impairments); *Beckley v. Apfel*, 152 F.3d 1056, 1060 (8th Cir. 1998) (pain from headaches); *Nesselrotte v. Sullivan*, 939 F.2d 596, 598 (8th Cir. 1991) (headaches); *Johnson v. Sec'y of Health and Human Servs.*, 872 F.2d 810, 814 (8th Cir. 1989) (headaches); *Hawkins v. Astrue*, No. 3:08CV124, 2010 WL 2599717, at *2-3 (E.D. Ark. June 22, 2010) (fibromyalgia); *Sachs v. Astrue*, No. 1:05CV106, 2008 WL 686325, at *23-24 (E.D. Mo. Mar. 10, 2008) (fibromyalgia).  By definition, "severe impairments" are those which "which significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c); *Webber v. Sec'y, Health & Human Servs.*, 784 F.2d 293, 299 (8th Cir. 1986) ("We fail to comprehend how the Appeals Council could possibly have determined that [the claimant's nonexertional impairment] constitutes a 'severe' impairment and yet concluded that this nonexertional impairment does not significantly affect her

exertional abilities."); *see also King v. Astrue*, 564 F.3d 978, 979 (8th Cir. 2009); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).

As noted, Badgett's fibromyalgia and headaches are nonexertional impairments and, because the ALJ found that these impairments are severe, by definition they significantly limit Badgett's ability to do basic work activities.   Consequently, the ALJ's decision to rely solely on the Medical-Vocational Guidelines without eliciting the testimony of a vocational expert was error.  The ALJ invaded the province of the vocational expert.  *Sanders v. Sullivan*, 983 F.2d 822, 823-24 (8th Cir. 1992).

> [I]t is clear in our circuit that vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work. Vocational expert testimony is not required until step five when the burden shifts to the Commissioner, and then only when the claimant has nonexertional impairments, which make use of the medical-vocational guidelines, or "grids," inappropriate.

*Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (internal citations omitted).

The ALJ's findings are inconsistent to the extent that he found that Badgett's fibromyalgia and headaches are severe impairments but concluded, without testimony from a vocation expert, at the fifth step that Badgett is not disabled.  The record is also incomplete as to whether Badgett has any past relevant work.

For the foregoing reasons, the Commissioner is reversed and this action is remanded for proceedings consistent with this opinion.  This is a sentence four remand.  *See Travis v. Astrue*, 477 F.3d 1037, 1039 (8th Cir. 2007).

IT IS SO ORDERED this 22nd day of June, 2011.

_J. Leon Holmes_

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE